Filed 12/13/23  In re C.S. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re C.S., <br><br> a Person Coming Under the Juvenile Court Law. | B329602 <br><br> (Los Angeles County Super. Ct. No. 21CCJP02807) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> BRENDAN S., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kristen Byrdsong, Judge Pro Tempore. Conditionally affirmed and remanded with directions.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica Buckelew, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant Brendan S. (Father) challenges the juvenile court's order terminating his parental rights to his daughter C.S. pursuant to Welfare and Institutions Code section 366.26.[1] The child's mother B.I. (Mother), who also had her parental rights terminated, is not a party to this appeal. Father argues we should reverse because the juvenile court failed to adequately inquire whether C.S. was an Indian child as defined by the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.)[2] before terminating his parental rights. Although we find no reversible error with the ICWA inquiry of Mother's extended family members, there was no attempt to inquire of any paternal extended family members. We therefore conditionally affirm the termination of parental rights, and remand for appropriate efforts to make ICWA inquiry of extended paternal family members.

_____

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

## FACTUAL AND PROCEDURAL BACKGROUND

As this appeal involves only ICWA-related issues, we limit our factual and procedural summary accordingly. On June 15, 2021, pursuant to a court-issued removal order and protective custody warrant, the Los Angeles County Department of Children and Family Services (DCFS) removed C.S. from Mother and Father and placed her with maternal aunt Hannah A. The following day, DCFS filed a section 300 petition, which alleged Mother's history of substance abuse and Father's failure to protect C.S. endangered the child's safety. The petition included an ICWA attachment stating Mother and Father were asked in May 2021 about potential Indian ancestry and neither parent gave the social worker any reason to believe C.S. was an Indian Child.

On June 21, 2021, the juvenile court held an initial hearing, at which neither parent was present. The court deferred any ICWA-related findings for the parents to appear.

On June 22, 2021, Father and Mother were separately interviewed by telephone. During her interview, Mother indicated she has three siblings. During his interview, Father mentioned that he was raised by his mother in Southern California and has two sisters and two brothers. There is no indication either parent was re-asked about Indian heritage during these June 22, 2021 interviews, or that DCFS requested contact information for any of the parents' family members.

A last minute information (LMI) filed in connection with a June 28, 2021 hearing noted Father had a prior child services case in Riverside County. In that prior case, the court terminated Father's parental rights to a different child in 2012 and that child was subsequently adopted. Neither the LMI nor

any other document in the record references any ICWA findings from that prior matter. On June 28, 2021, the juvenile court found that ICWA did not apply.

On July 28, 2021, the section 300 petition was amended to include an allegation about Father having a prior dependency case due to neglect, and Mother and Father made their first court appearances. Both parents filed a parental notification of Indian status form (ICWA-020) stating they had no Indian ancestry. Father did not sign his form. The juvenile court noted its receipt of the ICWA-020 forms on the record, found that ICWA did not apply, and advised the parents to keep their attorneys, DCFS, and the court aware of any new information relating to possible ICWA status. At no point in any later proceedings did Father, Mother, or their counsel make DCFS or the court aware of any new ICWA-related information.

On October 12, 2021, the juvenile court held a jurisdiction hearing. Father was not present. Father's attorney requested a continuance as counsel did not know where his client was. The court denied the request and asserted jurisdiction over C.S.

On December 6, 2021, the juvenile court held a contested disposition hearing; neither Mother nor Father appeared. A LMI filed before the hearing informed the court that regular visitation was not taking place due to Mother and Father not calling or confirming they would attend. The parents' cell phone numbers constantly changed, and DCFS was unaware where Mother and Father were residing.

At a court hearing on January 31, 2022, at which Father was not present, Father's counsel indicated he had no direction from Father regarding a DCFS recommendation to move C.S. to

4

the home of maternal cousin Jessica T. The child was placed thereafter with Jessica T.

A status review report filed May 12, 2022, indicated that the social worker routinely lost contact with Mother and Father, who regularly changed their phone numbers and did not appear for visitation. The parents provided the social worker with over 14 contact numbers during the review period. The social worker further noted the numbers provided often did not accept text or voicemail messages.

On July 14, 2022, the juvenile court held a contested review hearing at which neither Mother nor Father appeared. Father's counsel indicated he did not know where Father was. The court terminated reunification services and set a section 366.26 hearing.

A section 366.26 report filed on October 12, 2022, indicated that maternal cousin and caregiver Jessica T. (who said she was in frequent contact with extended maternal family members) denied Mother's family had any Indian ancestry and said C.S. was not an Indian child. The report also noted the social worker continued to struggle to maintain contact with Mother and Father; they did not visit C.S., and their phone numbers kept changing and were usually "out of service." The report stated DCFS was unable to serve Mother and Father with notice of the section 366.26 hearing, and requested the court make a due diligence finding regarding DCFS's attempts to notice the parents. The due diligence declaration indicated numerous attempts to locate Mother and Father, and stated their whereabouts remained unknown.

A status review report filed on December 19, 2022, stated that Mother and Father had not had any contact with DCFS

during the period of supervision, and that neither parent had visited C.S.

A LMI filed January 31, 2023, stated that Mother and Father's whereabouts remained unknown. At a hearing on February 14, 2023, the juvenile court was informed Father was in custody. Counsel for DCFS requested a continuance of the section 366.26 hearing for Father to be transported to the hearing, for Father to sign his ICWA-020 form, and for Father to provide names of his relatives for ICWA inquiry. The court continued the hearing and ordered the "parents' counsel to make best efforts to ensure their clients sign an ICWA-020 form." The court was silent with regard to DCFS's request that the court order Father to provide contact information for his relatives for ICWA inquiry, and entered no such order.

At the continued hearing on February 22, 2023, Father was present in custody. The court again continued the matter and ordered DCFS to prepare an updated report on its ICWA inquiries.

On April 13, 2023, maternal grandmother and maternal aunt Theresa H. both denied any Indian heritage in the family. Maternal grandmother stated she did not know Mother's whereabouts but provided a cell phone number at which the social worker was able to speak to Mother, who again denied any Indian heritage.

A LMI filed on April 25, 2023, stated that Mother and Father continued to report no Indian ancestry.

On May 25, 2023, the juvenile court held a permanency planning hearing pursuant to section 366.26. No further ICWA findings were made at this hearing. Father was present in custody. The court found that C.S. was adoptable and that no

exceptions applied, and terminated the parental rights of Mother and Father. C.S. remained placed with the prospective adoptive parent, maternal cousin Jessica T. Father timely appealed.

## DISCUSSION

The juvenile court and DCFS "have an affirmative and continuing duty to inquire whether a child for whom a [section 300] petition . . . has been filed, is or may be an Indian child."[3] (§ 224.2, subd. (a).) This "duty to inquire begins with the initial contact" by DCFS. (*Ibid.*) Additionally, section 224.2, subdivision (b) states, in part, that "[i]nquiry includes, but is not limited to, asking . . . extended family members [and] others who have an interest in the child . . . whether the child is, or may be, an Indian child . . . ." Under ICWA, the term " 'extended family member' " is "defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of [18] and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin or stepparent." (25 U.S.C. § 1903(2).)

The record here indicates that both Mother and Father have extended family members who were not contacted by DCFS

---

[3] An "Indian child" is an unmarried person under 18 years of age who is (1) a member of a federally recognized Indian tribe or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions], subd. (b) [expanding the age range stated in the federal definition to include persons over 18, but under 21, years of age].)

7

about Indian heritage.  Mother at a minimum had an additional sister (Hannah A., with whom C.S. was initially placed) who was not the subject of ICWA inquiry; none of Father's relatives were contacted.  However, as prior decisions make clear, in the view of our division, DCFS's failure to inquire of extended family members does not result in automatic reversal.  (See *In re Adrian L.* (2022) 86 Cal.App.5th 342; *In re A.C.* (2022) 75 Cal.App.5th 1009; *In re S.S.* (2022) 75 Cal.App.5th 575; *In re Darian R.* (2022) 75 Cal.App.5th 502.)  Rather, we have generally evaluated the record to determine whether " 'the probability of obtaining meaningful information is reasonable in the context of ICWA.' " (*In re Darian R.*, *supra*, at p. 509, quoting *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)  Information available from extended family members must be both "readily obtainable," and "likely to bear meaningfully upon whether the child is an Indian child." (*In re Benjamin M.*, *supra*, at p. 744.)  In making this determination, we have rejected "a wooden approach to prejudice" (*In re A.C.*, *supra*, at p. 1017) and refused to require further inquiry when, based upon the particular circumstances presented by the record, it is apparent "that additional information would not have been meaningful to the inquiry" (*In re Benjamin M.*, *supra*, at p. 743; see, e.g., *In re S.S.*, *supra*, at p. 582).[4]

---

[4] Because federal law does not impose a duty on social workers to inquire of extended family members about tribal affiliation, any error would be under state law.  (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742; *In re A.C.* (2021) 65 Cal.App.5th 1060, 1069.)  The usual test for prejudicial state law error is whether, " 'after an examination of the entire cause, including the evidence,' " we are "of the 'opinion' that it is

Nothing in the record suggests that further inquiry of maternal extended family members would have produced additional information that would bear meaningfully on whether C.S. was an Indian child. DCFS obtained information from Mother, maternal grandmother, a maternal aunt, and a maternal cousin. All uniformly indicated Mother's family had no Indian ancestry. Further, maternal cousin indicated that maternal family members remained in contact with one another, such there is no reason to expect that extended family members not asked about ICWA would have new or different information about Native American ancestry. While Father faults these inquiries for being "made at the end of the case" instead of earlier, they were indisputably made before the court terminated Father's parental rights and nothing suggests the answers would have differed if DCFS had inquired earlier in the case. Thus, any alleged inadequacy in the ICWA inquiry of maternal extended family members was harmless.

Turning to paternal extended family members, the record shows DCFS made no inquiry of C.S.'s paternal relatives beyond Father. Both sides blame the other for this failure. DCFS faults Father's unavailability during most of the dependency proceedings and his failure to volunteer contact information for any extended family members for any inadequacy in its inquiry. Noting ICWA does not require it "to 'cast about' for information"

---

reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836; see *In re Benjamin M.*, *supra*, at p. 742 [*Watson* standard applies to agency's failure to comply with initial duty of inquiry under California's ICWA-related law].)

(*In re D.S.* (2020) 46 Cal.App.5th 1041, 1053), DCFS argues it did not err in failing to inquire beyond Father. For his part, Father asserts he was available at the beginning of the proceedings and again after he was in custody. He further notes the record does not indicate that DCFS ever asked for his relatives' contact information when Father was available.

DCFS cites opinions from other divisions of this court holding ICWA inquiry error harmless in the absence of some indication in the record that Father's disclaiming of Indian ancestry was unreliable. (See, e.g., *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1015; *In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted Sept. 21, 2022, S275578.) As noted above, this division applies a different analysis of harmless error. Our approach assumes Father's representation that he lacks Indian ancestry is not sufficiently reliable to support a finding of harmless error unless something else in the record corroborates it, such as findings in an earlier proceeding (*In re Darian R.*, *supra*, 75 Cal.App.5th at p. 509), or circumstances suggesting an extended family member would have come forward with information about Indian ancestry had they any (*In re S.S.*, *supra*, 75 Cal.App.5th at p. 582).

Such evidence is absent here. Father's unavailability during most of the proceedings undoubtedly made things more difficult for DCFS. But we cannot go so far as to say information from extended family members was not "readily obtainable" (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744), because Father indisputably was available during the June 22, 2021 interview when he mentioned several extended family members to DCFS, and for the three plus months from February 14, 2023, until the May 25, 2023 section 366.26 hearing when he was in custody.

10

But during those times, nothing in the record indicates DCFS ever asked Father for contact information for any of his extended family members, much less attempted to contact them. Nor did the court make any order to provide contact information that Father defied. Despite a DCFS request, the court did not order Father to provide his relatives' contact information to DCFS for ICWA inquiry.

The record here does not contain other information that would dispel concerns about ICWA's application. It is not the case that some but not all of Father's extended family members were contacted; none were. No paternal family member was requesting custody, and thus incentivized to declare any Indian ancestry. The record does not contain any ICWA findings from the earlier dependency case involving Father. Father was raised by his mother, but there is little information regarding Father's relationship with his mother, siblings, or others who might know of their heritage. Thus, there is insufficient information to reassure us that Father was close enough to his extended family that his knowledge of his ancestry, as declared in his ICWA-020 form, is reliable.

Father asks us to reverse the termination of his parental rights in light of the ICWA inquiry error. The better course, in our view, is to conditionally affirm the order terminating parental rights. (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 436; *In re Y.W.* (2021) 70 Cal.App.5th 542, 559.) A conditional affirmance of the termination order limits the juvenile court's authority to modify that order (see § 366.26, subd. (i)(1)), which reduces the chance of further delays in establishing permanency for C.S. apart from the remaining required ICWA inquiry.

11

We do not intend for DCFS to turn over every possible stone to investigate C.S.'s heritage, merely that DCFS make reasonable efforts to interview Father's extended family members, as defined by ICWA, provided their contact information is reasonably available. As noted above, no further inquiry is necessary of maternal extended family members. The record, however, does not allow us to conclude further inquiry of paternal extended family members is not possible or would not disclose useful information regarding C.S.'s heritage on Father's side of the family.

## DISPOSITION

The order terminating parental rights is conditionally affirmed. We remand for DCFS and the juvenile court to comply with the inquiry and notice provisions of ICWA and California law consistent with this opinion. If the court finds C.S. is an Indian child, it shall conduct further proceedings in compliance with ICWA and related California law. If not, the court's original order terminating parental rights will remain in effect.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:



ROTHSCHILD, P. J.       CHANEY, J.

12